**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RONNIE THOMAS,

               Petitioner,                                      Case Number: 2:08-CV-15020

v.                                                           HONORABLE VICTORIA A. ROBERTS

NICK LUDWICK,

               Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Ronnie Thomas has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the Mound Correctional Facility in Detroit, Michigan. He challenges his convictions for carjacking and armed robbery. For the reasons set forth below, the Court denies the petition.

### I. Background

Petitioner's convictions arise from a carjacking and robbery that occurred in Grand Rapids, Michigan, on April 12, 2004. William Smalley testified that, on that date, he drove to the Burton Quick Stop in his 1988 BMW to pick up his friend, Shamari Triggs. Triggs exited the passenger seat of a red vehicle and sat in the front seat of Smalley's BMW. Another man, identified at trial as Petitioner, exited the red car and sat in the back seat of Smalley's vehicle. Smalley testified that Petitioner took out a weapon and told him to drive. After Smalley exited the parking lot, Petitioner put an arm around Smalley's neck, held the gun to his head and told him to give Petitioner his money. Smalley gave Petitioner his money and jumped out of the

vehicle. Triggs also jumped out of the vehicle. Smalley later picked Petitioner out of a photo array.

Triggs testified that he met Petitioner about two days prior to the robbery and carjacking. He and Petitioner were driven to the Quick Stop by another unidentified person. Triggs testified that he was surprised when Petitioner got into Smalley's vehicle. He saw Petitioner point a gun at Smalley's head and demand money. He testified he had not known that Smalley was carrying a weapon.

Following a jury trial in Kent County Circuit Court, Petitioner was convicted of carjacking and armed robbery. On November 8, 2005, he was sentenced as a second habitual offender to 22 to 66 years' imprisonment for the carjacking conviction and 20 to 60 years' imprisonment for the armed robbery conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claim:

> Did the trial court err reversibly by instructing the jury in a manner which had an undue tendency to coerce which might cause a juror to abandon his or her conscientious dissent and defer to the majority for the sake of reaching agreement?

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Thomas*, No. 267334 (Mich. Ct. App. Apr. 26, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claim raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Thomas*, 480 Mich. 858; 737 N.W.2d 702 (Mich. 2007).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the same claim raised in state court.

## II. Petitioner's Motions

Pending before the Court are three motions filed by Petitioner. First, Petitioner filed a "Motion for Alternative Method for Obtaining Rule 5 Materials." Petitioner argues that, because Respondent failed to file Rule 5 materials, the Court should seek an alternative method of obtaining them. Respondent has filed the state court record relevant to a fair adjudication of the petition. Therefore, this motoin is denied.

Second, Petitioner filed a "Motion to Strike Respondent's Answer." Petitioner argues that the portion of the answer that references Petitioner' prior convictions, which are unrelated to the convictions challenged in this petition, should be stricken because they are irrelevant and can serve only to prejudice Petitioner. Federal Rule of Civil Procedure 12(f) authorizes a district court to strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and infrequently granted:

> [T]he action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice.

*Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953) (internal citations omitted); *Cronovich v. Dunn*, 573 F. Supp. 1330, 1338 (E.D. Mich. 1983). The Court finds that Respondent's Answer does not present any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter" so as to warrant striking the Answer under Fed. R. Civ. P. 12(f).

Lastly, Petitioner filed a "Motion to Sanction Respondent for Abusive and Dilatory Conduct." Petitioner alleges that Respondent's Answer is "riddled with frivolous legal contentions, factual [irrelevancy], and outright abusive and dilatory conduct." Motion at 2.

While the Court understands that Petitioner disagrees with many of the arguments asserted in Respondent's Answer, the Court finds that none of the arguments are asserted in bad faith, motivated by an improper purpose, frivolous, or otherwise warrant the imposition of sanctions under Rule 11, Rule 16, or Rule 37 of the Federal Rules of Civil Procedure.

### III. Standard

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

### IV. Discussion

#### A. Procedural Default

Respondent argues Petitioner's deadlocked jury instruction claim is waived because defense counsel failed to object to the charge. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (holding that federal habeas relief may be precluded on a claim that was not presented to the state courts in accordance with the state's procedural rules). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claim.

#### B. Deadlocked Jury Instruction

In his sole claim for habeas relief, Petitioner argues that the trial court erred by giving an unduly coercive deadlocked jury instruction. The Michigan Court of Appeals held that this claim was waived based upon counsel's failure to object at trial and declined to review the claim on the merits. Because no state court adjudicated the claim on the merits, the Court employs a *de novo* standard of review. *Miller v. Stovall*, __ F.3d __, 2010 WL 2499654, * 3 (6th Cir. June 22, 2010) ("When the state court does not address the merits of a claim, AEDPA deference does not apply and a federal court reviews the petitioner's legal claim *de novo*.").

5

When a jury is deadlocked, a trial court may give a supplemental charge urging the jury to continue its deliberations in order to arrive at a verdict. *See Allen v. United States*, 164 U.S. 492 (1896). The constitutionality of a deadlocked jury instruction depends upon whether the instruction in question was "coercive." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).

In *Allen*, the Supreme Court approved a jury instruction which, in substance, advised the jury that:

> in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Id.* at 501.

In this case, the jury sent a note to the court which read: "We are at a point where a decision cannot be met by a majority vote. What is the next step?" In response, the trial court gave the following instruction:

> First of all, obviously a verdict requires a unanimous vote, so it isn't just a majority, we need to have 12 jurors agree on whatever the verdict is . . .
>
> To answer your question, if, in fact, the jury finds itself unable to agree and is hopelessly deadlocked, then we would declare a mistrial. We'll have to send this jury home, we'll bring another jury in and try the whole case all over again. Now we can do that and, in fact, we do it on occasion here. I should point out that it's a process that tends to be somewhat time consuming and expensive, and, therefore, obviously if we can avoid it, we like to do that. The other thing we sometimes remind the jurors is that you've heard all of the evidence and if we bring another jury in they'll hear the same thing you heard and the next 12 people

> are not likely to be any smarter or dumber or any more perceptive or less
> perceptive than you are. So, the chances are that a similar group of people such
> as yourselves will have to grapple with the thing and we would prefer it,
> obviously, if it's possible, consistent with your conscience, for you to come to a
> resolution of the case in your own way and in your own time. So, that's what will
> happen if you are, in fact, unable to come to a verdict. We will send you home
> and start the process over again.
>
> For the reasons indicated, our preference is that if there's any way consistent with
> honor and judgment and your own [ ] consciences and sense of good will here you
> can do it, we'd like to have you continue with your work and see if you can come
> to a verdict. We always tell people in these cases it's important when you're
> deliberating that everybody not only explain why or what they think about the
> case, but also what their reasons are. . . . [S]pecifying the issues, the reasons why
> you feel the way you do, and then debating those reasons back and forth,
> frequently makes it possible for all the jurors to agree in the case.
>
> I'm going to ask that you work on it with good open minds and with that view in
> mind, in the hopes that [ ] perhaps a verdict can be reached, but understanding
> that sometimes it can't be and sometimes citizens just honestly can't come to a
> consensus opinion and, therefore, if that happens the case will be mistried and
> we'll start it over again.
>
> . . . I am going to ask you to work at this with the hope that perhaps a better
> resolution may be had. Either way, obviously we will accept what your final
> conclusion is after reasoning the matter out and coming to a complete end of the
> line. If you're simply unable to come to a unanimous verdict, then we'll accept
> that and deal with it in the manner I've indicated.

Tr., Vol. III, pp. 4-5.

Petitioner objects specifically to the following aspects of the instruction: (1) advising the jury that excusing this jury and re-trying the case would be "somewhat time consuming and expensive"; (2) advising the jury that another jury would not necessarily be any better-equipped to reach a verdict and would likely grapple with the same issues the current jury was having difficulty resolving; and (3) failing to advise the jurors that they should not give up their honest convictions because of the opinions of other jurors or in order to reach a verdict.

"The Sixth Circuit has criticized delivering an *Allen* charge to a jury that includes

7

reference to the cost and burden of a jury deadlock, but also held that such reference does not constitute *per se* reversible error." *U.S. v. Levit*, 39 F. App'x 97, 105 (6th Cir. 2002), (*citing United States v. Giacalone,* 588 F.2d 1158, 1167 (6th Cir. 1978); *United States v. Harris,* 391 F.2d 348, 354 (6th Cir. 1968)). A reference to the expense of retrial is evaluated based upon the individual circumstances of each case and whether the district court "unduly emphasized" these factors so as to have a coercive effect upon the jurors. *Id.* To determine whether a reference to the expense of retrial rendered a deadlocked jury instruction coercive, a court should consider whether the expense of trial was only one of several reasons given to encourage the jury to agree on a verdict or whether it was the sole focus of the instruction. *U.S. v. Clinton*, 338 F.3d 483, 490 (6th Cir. 2003). Similarly, the Ninth Circuit has held that "the expense of trial should not play any part in the jury's important function of determining the guilt or innocence of a criminal defendant." *United States v. Bonam*, 772 F.2d 1449, 1450 (9th Cir. 1985). But, reference to the expense of a retrial in a deadlocked jury instruction does not render the charge coercive if, considered in context, the reference is not unduly emphasized or conveyed as a more important factor than adhering to one's conscientious convictions. *Id. See also U.S. v. West*, 877 F.2d 281, 291 (4th Cir. 1989) (holding that reference to the costs of the trial and retrial did not place undue emphasis on this factor when considered in the context of the entire instruction and was not coercive); *McRae v. New York*, 271 F. Supp. 2d 402, 408 (E.D. N.Y. 2003) (same).

In this case, the reference to the expense of retrial was passing and was not unduly emphasized. It was one of several reasons mentioned to encourage the jury to continue deliberations. Therefore, the Court finds that it did not render the instructions coercive.

Next, Petitioner argues that the instruction that another jury would not necessarily be any

better-equipped to reach a verdict and would likely grapple with the same issues the current jury was having difficulty resolving was coercive. In *Unites States v. Frost,* 125 F.3d 346, 374-75 (6th Cir. 1997), the Sixth Circuit approved, on direct review, a deadlocked jury instruction that included the following language:

> Please keep in mind how very important it is for you to reach unanimous agreement. If you cannot agree, and if this case is tried again, there is no reason to believe that any new evidence will be presented, or that the next 12 jurors will be any more conscientious and impartial than you are.

*Id.* at 374-75. *See also United States v. Jones*, No. 08-5985, 2010 WL 395879, *4 (6th Cir. Feb. 4, 2010) (holding, on direct review, a charge which advised the jury that any future jury would be selected in the same manner as the deadlocked jury and there was no reason to believe they would be more capable of reaching a verdict was not coercive). *Miller-Bey v. Stine,* 159 F. Supp. 2d 657, 666-67 (E.D. Mich. 2001) (holding, on habeas review, the following instruction was not coercive: "You are selected in the same manner and from the same source which any future jury must be and there is no reason to suppose that the case will ever be submitted to 12 men and women more intelligent or impartial or more competent to decide it. Or that more or clearer evidence would be produced on one side or the other.").

In this case, the trial judge stressed that no juror should give up his or her conscientiously held beliefs, encouraged all jurors to reexamine their own and other jurors' beliefs and the basis for those beliefs, and, importantly, acknowledged that sometimes, despite the best efforts of all involved, a unanimous verdict is not possible. Considering these cautions, the Court concludes that, under the totality of the circumstances of this case, the language regarding a subsequent jury was not so coercive as to rise to the level of a constitutional violation.

Finally, Petitioner challenges the instruction because it did not advise jurors not to

9

surrender their honestly-held convictions. "There is no iron-clad rule that a trial court's failure to include that reminder, though unfortunate and ill-advised, is invariably fatal to the conviction." *Bedford v. Collins*, 567 F.3d 225, 238 (6th Cir. 2009). In this case, the instructions provided were the substantial equivalent of such a cautionary instruction. The jurors were advised that the verdict should be consistent with each juror's conscience and should be consistent with their own honor and judgment. The court further acknowledged that sometimes jurors simply cannot honestly come to a consensus opinion. Viewed in their entirety, the supplemental instruction adequately advised the jury not to surrender their honestly-held convictions.

## V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that habeas relief is not warranted. Therefore, the Court will deny a certificate of appealability. The Court also denies Petitioner leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## VI. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his petition

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's "Motion for Alternative Method for Obtaining Rule 5 Materials" [dkt. # 10], "Motion to Strike Respondent's Answer" [dkt. # 11], and "Motion to Sanction Respondent for Abusive and Dilatory Conduct" [dkt. # 12] are **DENIED**.

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: July 12, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record and Ronnie Thomas by electronic means or U.S. Mail on July 12, 2010.
>
> s/Carol A. Pinegar  
> Deputy Clerk